UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **ELIZABETH PIETZ,**<br><br>　　　　**Plaintiff,**<br><br>　v.<br><br>**BOROUGH OF HASBROUCK HEIGHTS,** *et al.*,<br><br>　　　　**Defendants.** | Case No. 23–cv–00196–JKS–ESK<br><br><br>REPORT AND<br>RECOMMENDATION |

**KIEL, U.S.M.J.**

　　**THIS MATTER** is before the Court on defendant Borough of Hasbrouck Heights' motion to enforce the settlement agreement and for leave to file an application for the award of counsel fees and costs (Motion) (ECF No. 35). Plaintiff Elizabeth Pietz filed opposition to the Motion (ECF No. 37) and defendant filed a reply to the opposition (ECF No. 41).   For the following reasons, I recommend that: (1) the Motion be granted to the extent it seeks to enforce the settlement agreement, and (2) defendant's request for leave to file an application for the award of fees and costs be denied.

## FACTS AND PROCEDURAL HISTORY

　　This is an action filed by plaintiff Elizabeth Pietz against her former employer, defendant Borough of Hasbrouck Heights, for unpaid overtime wages. Plaintiff alleges defendant "deliberately required [p]laintiff to perform duties before and after her shift started and ended and refused to pay [p]laintiff for the overtime required to perform those duties."   (ECF No. 10 p. 1 ¶ 3.)   Plaintiff filed the original complaint on January 13, 2023, claiming violations of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq*. (FLSA) and the New Jersey Wage and Hour Law, N.J.S.A. 34:11-56a, *et seq*.   (ECF No. 1 ¶ 1.)

On March 17, 2023, pursuant to District Judge Evelyn Padin's preferences, defendant requested a pre-motion conference concerning its intent to file a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). (ECF No. 4.) On March 21, 2023, plaintiff filed a response arguing defendant's stated bases for dismissing the complaint would fail. (ECF No. 7.) On March 27, 2023, I held a conference with the parties and determined that, for efficient case management and to preserve judicial resources, plaintiff would file an amended complaint and this matter should be mediated through the Court's mandatory mediation program. (ECF No. 9.) Following the conference, Jeannine DiSomma, Esq. was appointed the mediator. (*Id.* ¶1.) I also scheduled a telephone conference for May 24, 2023. (*Id.* ¶3.)

On April 7, 2023, plaintiff filed the amended complaint. (ECF No. 10.) On April 28, 2023, defendant renewed its request to Judge Padin for a pre-motion conference concerning its intent to file a motion to dismiss the amended complaint. (ECF No. 14.) In response, I directed the parties to proceed to mediation and advised defendant that it could renew its request for a pre-motion conference after the completion of the mediation. (ECF No. 15.)

On May 22, 2023, the parties filed a joint request to adjourn the telephone conference scheduled for May 24, 2023 because the mediation was "rescheduled to May 31, 2023." (ECF No. 16.) The telephone conference was adjourned to June 13, 2023. (ECF No. 17.) The parties participated in the mediation before Ms. DiSomma on May 31, 2023. (ECF No. 37–1 ¶4.)

## I. THE PARTIES' ATTEMPTS AT SETTLEMENT

### A. The First Attempt

Following the mediation with Ms. DiSomma on May 31, 2023, the parties believed they had reached a settlement. (ECF No. 35–1 p.9.) In accordance with that belief, plaintiff's counsel emailed defendant's counsel on the same day confirming that the parties "have agreed to resolve this matter in its entirety" for

payment of $25,000 from defendant to plaintiff. (EFC No. 35–5 p. 5.) However, plaintiff's counsel noted that the settlement was contingent on "all necessary governmental approvals, court approvals and settlement agreement and release," and:

> the parties entering into a comprehensive Settlement Agreement and Release, the material terms of which include, but are not limited to, that [p]laintiff shall not disparage the defendants; a full release of all claims,[1] inclusive of all federal and state causes of action; indemnifying the [d]efendant against all claims for liens; and a non-publicity clause.

(*Id.*)

Plaintiff responded to defendant's May 31, 2023 email with three comments, that (1) the non-disparagement agreement would be "mutual"; (2) the release would be as to "the **wage claims only** – [p]laintiff cannot legally release non-wage claims"; and (3) "broad confidentially provisions are not permitted in FLSA settlements." (*Id.* p. 4.)

Defendant responded to plaintiff's comments on June 2, 2023. (ECF No. 35–5 p. 3.) Defendant noted that defendant "will require a general release and [defendant is] unaware of any legal authority that would prevent [plaintiff] from releasing any such claims." (*Id.*) Defendant also advised plaintiff that payment of the settlement amount was "expected" on July 31, 2023 and requested plaintiff provide an "allocation as to wages and legal fees." (*Id.*) Plaintiff responded to defendant on the same day, saying that "[g]eneral release and confidentiality issues are FLSA Settlements 101. … [I]t[']s just the law." (*Id.* p. 2.) Plaintiff's counsel suggested that defendant "investigate this before preparing the settlement agreement" but noted that there are "[p]lenty of cases

---

[1] Defendant believes that only it was to receive a release from plaintiff and a "full release of claims" would not be provided from defendant to plaintiff. (ECF No. 35–1 p. 9) ("the Borough would receive a full release of all federal and state causes of action.")

in DNJ that explain [the prohibition of a general release in FLSA claims], and Judge Chesler has a good opinion." (*Id.*)

It appears that there were no further communications between the parties concerning the finalization of the settlement prior to the conference before me on June 13, 2023. Instead, at the June 13, 2023 conference, the parties advised me that the matter had settled at mediation and I directed the parties to file a motion for the Court's approval of the settlement. (ECF No. 18.)

Although the last communication between the parties before the conference indicated that defendant should "investigate … before preparing the settlement agreement," (ECF No. 35–5 p. 2), plaintiff apparently "waited weeks for [d]efendant to prepare the settlement agreement" and then "diligently followed up with [d]efendant on the whereabouts of the draft agreement." (ECF No. 37 p. 7.)

Because a motion to approve the settlement had not been filed, I followed up with the parties on July 10, 2023, after which I was told that plaintiff was waiting for a draft of the settlement agreement from defendant. (*Id.*) On July 20, 2023, defendant circulated a draft of the settlement agreement. (*Id.* p. 7; ECF No. 37–5 p. 3.)[2] Plaintiff responded on the same day saying that "[t]here is no meeting of the minds and we do not have an agreement" because, *inter alia*: (1) "[p]laintiff only raised wage claims" and the "insertion of NJLAD language is indicative of bad faith"; (2) "[p]laintiff cannot release unrelated claims"; and (3) payment was to be made by July 31, 2023, not "30 days following the next regular Borough Council Meeting." (ECF No. 37–5 pp. 2, 3.) In response, defendant

---

[2] The First Draft contains a provision for release of plaintiff's claims against defendant that set forth a litany of potential claims relating to plaintiff's employment with defendant including claims under the NJLAD. (ECF No. 35–6 pp. 3–4.) The First Draft also states that "during the mediation, [p]laintiff raised issues of potential discrimination under the … ("NJLAD") and other theories of liability. (*Id.* p. 2.) The First Draft does not contain a release of defendant's potential claims against plaintiff.

suggested that plaintiff provide a redline version of the First Draft with plaintiff's comments. (*Id.* p. 2.)

On July 25, 2023, plaintiff provided a redline version of the First Draft with plaintiff's comments (First Redline). (ECF Nos. 35–7, 8.) The First Redline revised the release provision to only release plaintiff's wage-related claims. (ECF No. 35–8 pp. 3, 4.) Plaintiff, after an exchange of emails regarding the payment date to be included in the settlement agreement, requested that defendant make payment of the settlement amount within seven days of the Court's approval of the settlement. (ECF Nos. 37 pp. 8, 9; 37–7.) After two days without a response from defendant, on July 31, 2022, plaintiff filed a letter that reported to me that "despite [p]laintiff's best efforts, this matter is not settled." (ECF No. 19.)

### B. The Second Attempt

In response to the notification that the settlement discussions had fallen apart, I held a telephone conference with the parties on August 17, 2023. (ECF No. 20.) At the telephone conference, I was advised by the parties that an issue arose concerning "a general release," which was preventing the parties from consummating the settlement. Given what appeared to be an impasse in the settlement discussions, I directed the parties to "confer and file a proposed case management schedule by August 28, 2023" and I set a further conference for August 30, 2023. (ECF No. 21.)

The parties continued settlement discussions. About an hour after the August 17, 2023 conference, plaintiff's counsel emailed defendant's counsel with this message:

> [Plaintiff] will agree to [d]efendant's proposed expanded release and the delayed payment timeline for $55,000.00, inclusive of costs and attorneys' fees. … Please contact me after you reviewed with your client. Thank you.

5

(ECF No. 35–10 p.2.)   The parties thereafter had a telephone conversation on August 22, 2023 regarding the amount of the settlement for plaintiff's agreement to the "expanded release," after which plaintiff by email rejected defendant's offer of $30,000 and lowered her demand to $47,000.   (ECF No. 37 p.9; ECF No. 37–9 p.2.)   During a subsequent telephone conversation, defendant's counsel increased defendant's offer to $35,000.   (ECF No. 37 p.9.)   On August 26, 2023, plaintiff's counsel emailed defendant's counsel the following counter-offer:

> Thank you for your patience.   I conferred with [plaintiff] on [defendant's] proposal ($35k and certain additional terms that would enable a broad general release and a confidentially provision) in respond to [p]laintiff's August 22 demand ($47,000 and the terms set forth in my August 17 email).
>
> We have a resolution if [defendant] agrees to $40,000.00 and the terms set forth in my August 17 email.   The agreement would include a broad general release and a confidentiality provision.

(ECF No. 35–11 p.9.)

The parties filed a joint proposed consent case management order on August 28, 2023.   (ECF No. 22.)   At the August 30, 2023 conference, however, the parties advised me that they were "very close" and requested that I not enter a case management order.   In order to provide the parties additional time to finalize the settlement, I did not enter a case management order and set a further conference for September 15, 2023.   (ECF No. 23.)

After further negotiations, defendant's counsel emailed plaintiff's counsel on September 8, 2023 with this proposal:

> 1. Global settlement amount of $37,000.00 — please just advise how you would like that amount allocated;
>
> 2. A broad, general release of all claims;
>
> 3. Dismissal with Prejudice of the present suit; and
>
> 4. [Defendant] will cover 100% of the mediation costs.

(ECF No. 35–11 pp. 7, 8.)

The parties continued their negotiations on September 11, 2023 in a series of emails. Through the emails, defendant agreed to a settlement amount of $37,500 and the parties agreed to the mechanics of payment and procedure for allocation of the payment. (ECF No. 35–11 pp. 3–5.) At 12:11 p.m., plaintiff's counsel summarized the terms of the settlement as:

> [Plaintiff] agrees to $37,500.00 as a global settlement amount and a broad, general release of all claims (acceptance of the terms set forth in your Friday, September 8, 2023 10:53 AM email) if:
>
> 1. Payment is received by 10/16/23.
>
> 2. Payment is in the form of two (2) checks: 1 check to [p]laintiff described in the agreement as for non-economic personal physical injuries and/or physical sickness, and emotional distress or mental anguish derived from same; and 1 check representing attorneys' fees and costs. [Plaintiff's counsel] will provide the allocation in the agreement.
>
> 3. Dismissal with prejudice of the present suit upon receipt of payment.

(ECF No. 35–11 pp. 2, 3.) The following morning, defendant's counsel responded, "We are in agreement, then. We will circulate a settlement agreement with the agreed upon terms." (*Id.* p. 2.) Plaintiff's counsel responded a few hours later, "Great. Thank you." (*Id.*) It appeared, at this point, a settlement had been reached. And, indeed, at the September 15, 2023 telephone conference, the parties advised me that the matter had settled. (Minute entry after ECF No. 23.)

A few hours after the September 15, 2023 conference, defendant's counsel emailed a revised settlement agreement (Second Draft) to plaintiff's counsel. (ECF Nos. 35–12; 37–10 p. 2.) Plaintiff's counsel responded on the same day with a redline version of the Second Draft with his comments (Second Redline). (ECF

7

No. 35–13.) For the first time, plaintiff sought a release of claims from defendant to plaintiff. (*Id.* p. 4.) Plaintiff's newly proposed provision (Mutual Release Provision) provides:

> The Release described herein is, to the extent applicable, is mutual between the Parties. The Borough does hereby fully and forever release, remit, acquit, remise, hold harmless and discharge [p]laintiff from any and all claims related to her employment, known or unknown, from the beginning of time through the date of this Agreement.

(*Id.*) On September 18, 2023, defendant's counsel responded with a new redline, which struck the Mutual Release Provision. (ECF Nos. 35–14 p. 4; 37–12 p. 2.) Defendant's counsel explained that defendant "could not accept a mutual release and still meet the timeline that [p]laintiff's [counsel] had stated was a material term as it would require a separate approval." (ECF No. 41 pp. 8, 9.) A flurry of emails followed between the parties about whether the Mutual Release Provision should be included in the settlement agreement. (ECF Nos. 35–15 pp. 5, 6 (plaintiff's counsel stating: "We reject striking the mutual release language. I glossed over it during our call, but on further reflection, it's a standard term."); p. 3 (defendant's counsel advising that the Mutual Release Provision would not be accepted because defendant "paid a premium for that broad general release … [and] the concept of a mutual release was never raised in any previous iteration nor was it sought in any prior discussions."); and p. 2 (plaintiff asserting that "[m]utual release language is standard in all employment cases settling NJLAD and related claims … [and] [i]t does not need to be raised.").)

On September 26, 2023, plaintiff advised me by letter "that this matter is not settled, despite [p]laintiff's best efforts." (ECF No. 24.) In response, I set a telephone conference for November 9, 2023 and directed defendant to answer or otherwise move as to the amended complaint by October 20, 2023. (ECF No. 25.) Defendant then renewed its request to Judge Padin for a pre-motion conference

concerning its intention to file a motion to dismiss the amended complaint. (ECF No. 26.) Judge Padin waived the need for a pre-motion conference and granted leave for defendant to file a motion to dismiss. (ECF No. 31.) Defendant, thereafter, filed its motion to dismiss the amended complaint (Motion to Dismiss) on November 22, 2023. (ECF No. 34.)

Defendant also filed the present Motion on November 22, 2023. (ECF No. 35.) I administratively terminated the Motion to Dismiss pending the resolution of the present Motion. (ECF No. 36.)

## II. THE PARTIES' ARGUMENTS

Defendant argues that the parties entered into an "enforceable settlement agreement with clearly defined essential terms" on September 13, 2023. (ECF No. 35–1 p.16.) According to defendant, the essential terms of the settlement agreement are: (1) plaintiff would receive $37,500; (2) the payment would be made by defendant to plaintiff by a date certain; and (3) defendant would receive a broad, general release of claims from plaintiff. (*Id.* p.28.) As to plaintiff's demand for a mutual release, defendant explains that plaintiff never "request[ed], negotiate[d], or s[ought] a 'mutual' release prior to the parties agreeing on the terms of the settlement[,]" and, therefore, the mutual release was not essential to the settlement. (*Id.* pp.28, 29.)

Plaintiff argues that there was no meeting of the minds between the parties regarding the "nature of the 'broad general release of claims.'" (ECF No. 37 p.12.) Plaintiff also argues that the parties intended to "exchange the drafts until there was a final document reflecting the agreed-upon terms and ready for execution." (*Id.* p.14.) Plaintiff concedes that she did not explicitly insist on a mutual release until September 15, 2023 but repeatedly notes that there was no discussion of excluding plaintiff from the release. (*Id.* pp.9, 10, 12). Plaintiff argues that she believed that the parties' discussions about a "broad, general release" were referring to a mutual release. (*Id.* p.12.) Plaintiff asserts that

9

the mutual release is an essential term to the settlement agreement between the parties and, because there was no agreement on the scope of the release, the Motion must be denied. (*Id.* p.13.)

## **DISCUSSION**

### A. **Standard**

State law relating to the construction and enforcement of contracts govern a federal court's enforcement of contracts. *Excelsior Ins. Co. v Pennsbury Pain Ctr.*, 975 F. Supp. 342, 348–49 (D.N.J. 1996). Settlement of litigation ranks high in the public policy of New Jersey. *Pascarella v. Bruck*, 190 N.J. Super. 118, 125 (App. Div. 1983), *certif. denied*, 94 N.J. 600 (1983). "Where the parties agree upon the essential terms of a settlement, so that the mechanics can be 'fleshed out' in a writing to be thereafter executed, the settlement will be enforced notwithstanding the fact the writing does not materialize because a party later reneges." *Lahue v. Pio Costa*, 263 N.J. Super. 575, 596 (App. Div. 1993) (quoting *Bistricer v. Bistricer*, 231 N.J. Super. 143, 145 (Ch. Div. 1987)), *certif. denied*, 134 N.J. 477 (1993); *see Gonzalez v. Pace Motor Lines, Inc.*, No. 19–21202, 2022 WL 2439859, at *2 (D.N.J. Feb. 22, 2022) (recommending enforcement of a settlement agreement, and holding the "addition of terms to effectuate the settlement that do not alter the basic agreement will not operate to avoid enforcement of an agreement to settle a litigated matter"), *adopting report and recommendation*, 2022 WL 2439860 (D.N.J. Mar. 9, 2022). Under New Jersey law, moreover, a contract arises from the manifest intentions of the parties to engage in an offer and acceptance of sufficiently definite essential terms. *Weichert Co. Realtors v. Ryan*, 128 N.J. 427, 435 (1992).

"Parties may bind themselves by an informal memorandum, even though they contemplate the execution of a more formal document." *Hackensack Univ. Med. Ctr. v. Yinglian Xiao*, No. 17–02822, 2018 WL 2095598, at *3 (D.N.J. May 7, 2018); *Excelsior*, 975 F. Supp. at 349 ("[I]f the negotiations are finished and the

contract between the parties is complete in all its terms and the parties intend that it shall be binding, then it is enforceable, although lacking in formality and although the parties contemplate that a formal agreement shall be drawn and signed."); *see also United States v. Lightman*, 988 F. Supp. 448, 459 (D.N.J. 1997); *McDonnell v. Engine Distribs.*, No. 03–01999, 2007 WL 2814628, at *3 (D.N.J. Sept. 24, 2007), *aff'd*, 314 F. App'x 509 (3d Cir. 2009); *Kennedy v. Samsung Elecs. Am., Inc.*, No. 14–04987, 2018 WL 2296702, at *5 (D.N.J. May 21, 2018). Additionally, a court should "treat a motion to enforce settlement under the same standard as a motion for summary judgment because the central issue is whether there is any disputed issue of material fact as to the validity of the settlement agreement." *Gonzalez*, 2022 WL 2439859, at *3 (citing *Washington v. Klem*, 388 F. App'x 84, 85 (3d Cir. 2010)).

### B.   The Parties Agreed to the Essential Terms of a Binding Settlement

I find that the undisputed facts show that the parties agreed to the essential terms of a binding settlement agreement on September 13, 2023. (ECF No. 35–11 pp. 2, 3.) The parties agreed to the terms set out in plaintiff's September 11, 2023 email (*id.*), which incorporated the terms set forth in defendant's September 8, 2023 email sent at 10:53 a.m. (*id.* pp. 7, 8). The essential terms consist of the following: (1) payment amount; (2) payment terms; (3) a general release; and (4) defendant's payment of the mediation costs. (*Id.* pp. 3, 8.) Specifically, plaintiff's counsel emailed defendant on September 11, 2023 stating, "My client agrees to $37,5000.00 as a global settlement amount and a broad, general release of all claims (acceptance of the terms set forth in your Friday, September 8, 2023 10:53 AM email) if" defendant provided payment by October 16, 2023 allocated as requested by plaintiff. (*Id.*) Defendant's counsel then replied on September 13, 2023, "Great. Thanks, Tom. We are in agreement, then." (*Id.* p. 2.) Plaintiff's counsel responded a few hours later, "Great. Thank you." (*Id.*)

11

This exchange constitutes an offer and acceptance of the essential terms, supported by consideration.

Plaintiff does not dispute that the parties had a meeting of the minds with respect to the payment amount, payment terms, mediation costs, and *a* release. Rather, plaintiff understood the "broad, general release of all claims" to be a mutual release between the parties. (ECF No. 37 p. 12.) However, throughout the months of settlement negotiations the parties had been discussing only a release of plaintiff's claims against defendant. Indeed, "[o]bjective manifestations of intent are controlling when determining whether there was a meeting of the minds." *Newmark v. Am. Express Co.*, No. 20–10241, 2022 WL 17340775, at *4 (D.N.J. Nov. 30, 2022); *see also Brawer v. Brawer*, 329 N.J. Super. 273, 283 (App. Div. 2000) ("A contracting party is bound by the apparent intention he or she outwardly manifests to the other party."). While plaintiff may have understood the release to be "mutual," she did not manifest an intent to include a mutual release in the settlement agreement.

Plaintiff had numerous opportunities to raise the inclusion of a mutual release in the settlement agreement.[3] Plaintiff points to the lack of any "writing

---

[3] On May 31, 2023, defendant emailed plaintiff to finalize the terms of the settlement, stating that the material terms include, *inter alia*, "[p]laintiff shall not disparage the defendants; [and] a full release of all claims." (ECF No. 35–5 p. 5.) Plaintiff responded the same day objecting to defendant's characterization of the material terms. (*Id.* p. 4.) Plaintiff specified that (a) the non-disparagement clause would need to be mutual and (b) the release could only pertain to wage claims because "[p]laintiff cannot legally release non-wage claims." (*Id.*) Here, plaintiff demanded that only the proposed non-disparagement provision would need to be mutual.

Next, on July 20, 2023, defendant circulated the First Draft, which included a unilateral release of plaintiff's claims. (ECF No. 35–6 pp. 3, 4.) Again, plaintiff only took issue with the fact that the release of plaintiff's claims was not limited to a release of wage-related claims only. (ECF No. 37–5 pp. 2, 3.) When plaintiff returned the First Redline, plaintiff did not add language reflecting a mutual release. (ECF No. 37–6 pp. 4, 5.) Despite discussing and revising the release provision, plaintiff again did not manifest any intent to convert it to a mutual release until after the parties had already reached an agreement on the essential terms.

between the [p]arties indicat[ing] that [p]laintiff would be excluded from the broad general release." (ECF No. 37 p.9.) However, the First Draft explicitly included a unilateral release and plaintiff did not take issue upon reviewing that provision. "The intent that is relevant in determining whether there has been a meeting of the minds is the 'objective intent' that the contracting party 'outwardly manifests to the other party. It is immaterial that he or she has a different, secret intention from that outwardly manifested.'" *United Supply Co. v. Crivaro*, No. 17–03256, 2018 WL 1605152, at *4 (D.N.J. Apr. 3, 2018) (quoting *Hagrish v. Olson*, 254 N.J. Super. 133, 138 (App. Div. 1992)). Because of the lack of any manifestation to the contrary, it follows that the parties were continuing to discuss a unilateral release when negotiating the "broad, general release" to be included in the Second Draft.

*Shernoff v. Hewlett-Packard Co.,* No. 04–04390, 2006 WL 3497798 (D.N.J. Dec. 4, 2006), *aff'd*, 302 Fed. App'x 83 (3d Cir. 2008), is instructive. There, the Court found, and the Third Circuit affirmed, that there was an enforceable settlement agreement containing a unilateral release — despite plaintiff's internal belief that the release should be mutual — where the evidence demonstrated defendant requested a release of claims to defendant, plaintiff agreed to this request, and plaintiff did not timely request a release from defendant. *Id.* at *4. The circumstances are the same here.[4]

### C. The Parties Reached Agreement on the Essential Terms without Executing a Formal Written Agreement

Because the parties had a meeting of the minds regarding the unilateral nature of the "broad, general release," the remaining question is whether the

---

[4] Indeed, plaintiff all but admits that the mutual release was an afterthought raised "on further reflection." (ECF Nos. 35–15 pp.5, 6 (plaintiff's counsel stating: "We reject striking the mutual release language. I glossed over it during our call, but on further reflection, it's a standard term.").) "Such buyer's remorse shall not be countenanced" and, therefore, the parties' agreement on the essential terms on

13

parties actually reached an enforceable agreement on the essential terms on September 13, 2023 despite the lack of a signed, formal written agreement. Plaintiff argues that the parties were still negotiating the material terms of the settlement agreement, asserting that the parties "intended to exchange [draft settlement agreements] until there was a final document reflecting the agreed-upon terms and ready for execution." (ECF No. 37 p.14.) However, a signed, formal document is not required for a settlement to be enforced. *Comerata v. Chaumont, Inc.*, 52 N.J. Super. 299, 305 (App. Div. 1958) ("parties may orally, by informal memorandum, or by both[,] agree upon all the essential terms of a contract and effectively bind themselves thereon, if that is their intention, even though they contemplate the execution later of a formal document to memorialize their undertaking."). Moreover, a settlement agreement should be enforced if the parties agree on the essential terms while still contemplating the execution of a formal document memorializing their undertaking. *Lightman*, 988 F. Supp. at 459; *McDonnell*, 2007 WL 2814628, at *3; *Kennedy v. Samsung Elecs. Am. Inc.*, 2018 WL 2296702, at *5.

Plaintiff argues that she did not agree to the "release language" and, therefore, upon seeing the release provision in the Second Draft, plaintiff returned the Second Redline adding a mutual release. (ECF No. 37 p.12.) At this point, however, the parties were exchanging drafts in order to "flesh[] out" the mechanics and non-essential terms of the settlement rather than negotiate essential terms. *Bistricer*, 231 N.J. Super. at 145. The parties' communications on September 11 and 13, 2023 reflect an agreement on the

---

September 13, 2023 is binding. *Atlas Sys., Inc. v. Reddy*, No. 16–05381, 2020 WL 7251154, at *7 (D.N.J. Dec. 4, 2020).

essential terms, supported by consideration, and an offer and acceptance of those terms.

Unlike the settlement negotiations in May 2023 wherein the parties contemplated that a settlement would be contingent on "the parties entering into a comprehensive Settlement Agreement and Release," (ECF No. 35–5 p.5), the settlement reached on September 13, 2023 was not contingent on an executed settlement agreement. During the second round of negotiations, neither party manifested an intent for the settlement to be contingent on the execution of a final written agreement. The fact that drafts were continuing to be exchanged thereafter does not invalidate the agreement that was set on September 13, 2023.

### D. Defendant's Request for Leave to File an Application for the Award of Counsel Fees and Costs Should be Denied

Defendant requests leave to file an application for the award of legal fees and costs relating to the Motion. Here, based on my review of the communications between the parties and my discussions with the parties at numerous conferences, I do not find that plaintiff acted in bad faith, vexatiously, wantonly, or for oppressive reasons in opposing the Motion. *See Jersey Shore Univ. Med. Ctr. v. Loc. 5058, Health Pros. & Allied Emps.*, No. 16–34840, 2017 WL 3671250, at *1 (D.N.J. Aug. 24, 2017) (denying motion for attorneys' fees where the losing party's "position was not 'so lacking in merit that costs and attorneys' fees should be imposed.'") (quoting *Mobil Oil Corp. v. Indep. Oil Workers Union*, 679 F.2d 299, 305 (3d Cir. 1982)). Rather, plaintiff had non-frivolous arguments for why no enforceable settlement was reached. Accordingly, I recommend that defendant's request for leave to file an application for the award of legal fees and costs be denied.

## RECOMMENDATION AND ORDER

I issue this report and recommendation upon my review of the papers and without oral argument. *See* Fed.R.Civ.P. 78(b); *see also* L.Civ.R. 78.1(b). For the reasons stated above, it is:

1. **RECOMMENDED** that the Motion be **GRANTED in part and DENIED in part**, and if the recommendations herein are confirmed, that the Court enter an order: (a) requiring defendant to pay plaintiff $37,500.00; (b) requiring such payment to be made to plaintiff within 30 days of the order; (c) requiring plaintiff to release all claims against defendant following receipt and clearance of payment; (d) requiring defendant to pay for the costs of the mediation between the parties; and (e) denying defendant's request for leave to file an application for the award of legal fees and costs.

2. **ORDERED** that the Clerk of the Court administratively terminate the Motion at ECF No. 35 pending the review of this report and recommendation.

3. **ORDERED** that the Clerk of the Court activate this report and recommendation to indicate that it requires further action by the District Judge.

4. **ORDERED** that the parties have **14 days** to file any objections to this report and recommendation pursuant to Local Civil Rule 72.1(c)(2).

                                            */s/ Edward S. Kiel*
                                            **EDWARD S. KIEL, U.S.M.J.**

Date: February 8, 2024